Firm I.D. No. 38118

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

FIRST NATIONAL BANK of VALPARAISO )
and JAMES R. WRIGHT, as Co-Special )
Administrators of the Estate of )
EARL H. EATON, deceased, )
　　　　　　　　　　　　　　　　 )
　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　 )
　　　　v. )　No: 08L066011
　　　　　　　　　　　　　　　　 )
Q.S. of ILLINOIS, LLC, an Illinois limited )　IN EXCESS OF $100,000.00
liability company, )　JURY TRIAL DEMANDED
QUALITY SERVICES, LLC, a foreign limited )
liability company, HUB GROUP, INC., a )
foreign company, and SAMPSON )
ADU BOADI, )
　　　　　　　　　　　　　　　　 )
　　　　　　Defendants. )

## COMPLAINT AT LAW

### Count I

### Q.S. of Illinois, LLC – Negligence - Wrongful Death

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as

Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter

"Estate"), complaining of Defendant, Q.S. OF ILLINOIS, LLC, (hereafter "Q.S.I."), pursuant

to the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq., allege and state as follows:

1. At all times relevant herein, Q.S.I. is an limited liability company duly formed

and organized under the laws of state of Illinois, with its principal place of in Illinois, and

was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Q.S.I., through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Q.S.I. was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6. On Sunday, October 8, 2006, Q.S.I. breached the foregoing duties and was negligent in one or more of the following respects, *inter alia*:

   a.   Q.S.I. failed to and systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

2

b.    Q.S.I. failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

c.    Q.S.I. failed to obtain Sampson Adu Boadi's (hereinafter "Adu Boadi") complete application for employment in violation of Part 391 of the FMCSRs;

d.    Q.S.I. failed to require Adu Boadi to comply with duties and prohibitions of driver regulations in violation of Part 390 of the FMCSRs;

e.    Q.S.I. encouraged Adu Boadi to violate the FMCSRs in violation of Part 390 of the FMCSRs;

f.    Q.S.I. failed to maintain records and documents as required under Part 390 of the FMCSRs;

g.    Q.S.I. improperly maintained records and documents in violation of Part 390 of the FMCSRs;

h.    Q.S.I. failed to maintain a complete driver's qualification file for Adu Boadi in violation of Part 391of the FMCSRs;

i.    Q.S.I. improperly maintained a driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

j.    Q.S.I. permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

k.    Q.S.I. required Adu Boadi to operate a tractor-trailer which it knew was in such a condition as to likely cause an accident or a breakdown of the vehicle in violation of Part 396 of the FMCSRs;

l.    Q.S.I. failed to adequately train Adu Boadi when reasonable training would have equipped Adu Boadi with the knowledge and skill to operate and maintain the tractor-trailer in a reasonably prudent manner in violation of Part 391 of the FMCSRs;

m.    Q.S.I. failed to conduct or require pre-trip inspections of its vehicle as required by Part 396 of the FMCSRs;

n.    Q.S.I. failed to require Adu Boadi to complete driver's daily logs;

o.    Q.S.I. permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

p.    Q.S.I. retained Adu Boadi who it knew or should have known was a careless and incompetent truck driver;

q.    Q.S.I. failed to reprimand and provide remedial training to Adu Boadi;

r.    Q.S.I. operated without adequate safety management controls; and/or

s.    Q.S.I. failed to use the same care and caution that a reasonably prudent person would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.    As a direct and proximate result of one or more of the foregoing negligent and/or willful and wanton acts and/or omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by the Defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

4

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    As a further direct and proximate result of Earl's death, his estate has incurred medical, hospital and/or funeral and burial expenses and attorney's fees.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this wrongful death action.

**WHEREFORE**, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Q.S. of Illinois, LLC for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

### Count II

### Q.S. of Illinois – Willful and Wanton - Wrongful Death

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Q.S. OF ILLINOIS, LLC, (hereafter "Q.S.I."), pursuant

5

to the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq., allege and state as follows:

1.   At all times relevant herein, Q.S.I is an limited liability company duly formed and organized under the laws of state of Illinois, with its principal place of in Illinois, and was and is an interstate motor carrier operating through and within the State of Illinois.

2.   On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3.   On Sunday, October 8, 2006, Q.S.I, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4.   At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5.   On and before Sunday, October 8, 2006, Q.S.I was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6

6. On Sunday, October 8, 2006, Q.S.I breached the foregoing duties and was willful

and wanton in one or more of the following respects, *inter alia*:

a.    Q.S.I. purposefully, consciously and/or willfully and wantonly failed to systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

b.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

c.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to obtain Sampson Adu Boadi's (hereinafter "Adu Boadi") complete application for employment in violation of Part 391 of the FMCSRs;

d.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to require Adu Boadi to comply with duties and prohibitions of driver regulations in violation of Part 390 of the FMCSRs;

e.    Q.S.I purposefully, consciously and/or willfully and wantonly encouraged Adu Boadi to violate the FMCSRs in violation of Part 390 of the FMCSRs;

f.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to maintain records and documents as required under Part 390 of the FMCSRs;

g.    Q.S.I purposefully, consciously and/or willfully and wantonly maintained records and documents in violation of Part 390 of the FMCSRs;

h.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to maintain a complete driver's qualification file for Adu Boadi in violation of Part 391of the FMCSRs;

i.    Q.S.I purposefully, consciously and/or willfully and wantonly maintained a driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

j.    Q.S.I purposefully, consciously and/or willfully and wantonly permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

k.    Q.S.I purposefully, consciously and/or willfully and wantonly required Adu Boadi to operate a tractor-trailer which it knew was in such a condition as to likely cause an accident or a breakdown of the vehicle in violation of Part 396 of the FMCSRs;

l.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to adequately train Adu Boadi when reasonable training would have equipped Adu Boadi with the knowledge and skill to operate and maintain the tractor-trailer in a reasonably prudent manner in violation of Part 391 of the FMCSRs;

m.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to conduct or require pre-trip inspections of its vehicle as required by Part 396 of the FMCSRs;

n.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to require Adu Boadi to complete driver's daily logs;

o.    Q.S.I purposefully, consciously and/or willfully and wantonly permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

p.    Q.S.I purposefully, consciously and/or willfully and wantonly retained Adu Boadi who it knew or should have known was a careless and incompetent truck driver;

q.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to reprimand and provide remedial training to Adu Boadi;

r.    Q.S.I purposefully, consciously and/or willfully and wantonly operated without adequate safety management controls; and/or

s.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to use the same care and caution that a reasonably prudent person would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.    As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by the Defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    As a further direct and proximate result of Earl's death, his estate has incurred medical, hospital and/or funeral and burial expenses and attorney's fees.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this wrongful death action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Q.S. of Illinois, LLC for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

### Count III

### Q.S. of Illinois, LLC – respondeat Superior - Wrongful Death

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Q.S. of ILLINOIS, LLC, (hereafter "Q.S.I."), pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq., allege and state as follows:

1. At all times relevant herein, Q.S.I. is an limited liability company duly formed and organized under the laws of state of Illinois, with its principal place of in Illinois, and was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Q.S.I, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter

10

"the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Q.S.I was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6. On Sunday, October 8, 2006, Q.S.I breached the foregoing duties and was negligent in one or more of the following respects, *inter alia*:

    a.    Q.S.I, through its employee and or agent, Sampson Adu Boadi, operated the tractor-trailer at an unreasonable speed given the extant conditions;

    b.    Q.S.I, through its employee and or agent, Sampson Adu Boadi ,operated the tractor-trailer in an unreasonable manner;

    c.    Q.S.I , through its employee and or agent, Sampson Adu Boadi, failed to exercise due care to avoid a collision;

    d.    Q.S.I , through its employee and or agent, Sampson Adu Boadi, failed to maintain his tractor-trailer under reasonable control;

    e.    Q.S.I , through its employee and or agent, Sampson Adu Boadi failed to maintain a proper lookout;

f.    Q.S.I, through its employee and or agent, Sampson Adu Boadi, failed to use his brakes in a safe and proper manner;

g.    Q.S.I, through its employee and or agent, Sampson Adu Boadi, operated his tractor-trailer in a sleep deprived or fatigued state;

h.    Q.S.I, through its employee and or agent, Sampson Adu Boadi, disregarded traffic control signals, in violation of Indiana statute;

i.    Q.S.I, through its employee and or agent, Sampson Adu Boadi, failed to slow down as he approached an intersection in violation of Indiana statute;

j.    Q.S.I, through its employee and or agent, Sampson Adu Boadi, willfully and wantonly refused to stop his vehicle when required by the traffic control signals;

k.    Q.S.I, through its employee and or agent, Sampson Adu Boadi, refused to yield the right of way; and/or

l.    Q.S.I, through its employee and or agent, Sampson Adu Boadi, was otherwise careless, negligent and/or willful and wanton in the operation of the tractor-trailer.

7.    By subject of Q.S.I's employment of and control over Sampson Adu Boadi,

Q.S.I. is subject to liability pursuant to the doctrine of respondeat superior.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter*

*alia*.: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah

Eaton-Madrid.

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    As a further direct and proximate result of Earl's death, his estate has incurred medical, hospital and/or funeral and burial expenses and attorney's fees.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this wrongful death action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Q.S. of Illinois, LLC for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## Count IV

## Quality Services, LLC – Negligence - Wrongful Death

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Quality Services, LLC, (hereafter "Quality"), pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq., allege and state as follows:

1.   At all times relevant herein, Quality was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3.   On Sunday, October 8, 2006, Quality, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia,* Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Quality was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6.   On Sunday, October 8, 2006, Quality breached the foregoing duties and was negligent in one or more of the following respects, *inter alia:*

   a.   Quality failed to systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

14

b.  Quality failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

c.  Quality failed to obtain Sampson Adu Boadi's (hereinafter "Adu Boadi") complete application for employment in violation of Part 391 of the FMCSRs;

d.  Quality failed to require Adu Boadi to comply with duties and prohibitions of driver regulations in violation of Part 390 of the FMCSRs;

e.  Quality encouraged Adu Boadi to violate the FMCSRs in violation of Part 390 of the FMCSRs;

f.  Quality failed to maintain records and documents as required under Part 390 of the FMCSRs;

g.  Quality improperly maintained records and documents in violation of Part 390 of the FMCSRs;

h.  Quality failed to maintain a complete driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

i.  Quality improperly maintained a driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

j.  Quality permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

k.  Quality required Adu Boadi to operate a tractor-trailer which it knew was in such a condition as to likely cause an accident or a breakdown of the vehicle in violation of Part 396 of the FMCSRs;

l.  Quality failed to adequately train Adu Boadi when reasonable training would have equipped Adu Boadi with the knowledge and skill to operate and maintain the tractor-trailer in a reasonably prudent manner in violation of Part 391 of the FMCSRs;

m.   Quality failed to conduct or require pre-trip inspections of its vehicle as required by Part 396 of the FMCSRs;

n.   Quality failed to require Adu Boadi to complete driver's daily logs;

o.   Quality permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

p.   Quality retained Adu Boadi who it knew or should have known was a careless and incompetent truck driver;

q.   Quality failed to reprimand and provide remedial training to Adu Boadi;

r.   Quality operated without adequate safety management controls; and/or

s.   Quality failed to use the same care and caution that a reasonably prudent person would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.   As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by the Defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

8.   On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

9.   As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance,

16

services and support which he had ably provided prior to October 8, 2006.

10.    As a further direct and proximate result of Earl's death, his estate
has incurred medical, hospital and/or funeral and burial expenses and attorney's fees.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R.
WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H.
EATON, deceased, by the Porter Superior Court, and are authorized to bring this wrongful
death action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES
R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased,
demand judgment for damages against the Defendant, Quality Services, LLC for
compensatory damages in an amount to be determined herein, for the costs of this action,
and for any and all other relief that the Court may deem proper under the circumstances.

### Count V

### Quality Services, LLC – Willful and Wanton – Wrongful Death

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as
Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter
"Estate"), complaining of Defendant, Quality Services, LLC, (hereafter "Quality"), pursuant
to the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq., allege and state as follows:

17

1.  At all times relevant herein, Quality was and is an interstate motor carrier operating through and within the State of Illinois.

2.  On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3.  On Sunday, October 8, 2006, Quality, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4.  At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5.  On and before Sunday, October 8, 2006, Quality was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6.  On Sunday, October 8, 2006, Quality breached the foregoing duties and was willful and wanton in one or more of the following respects, *inter alia*:

a.  Quality purposefully, consciously and/or willfully and wantonly failed to systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

b.  Quality purposefully, consciously and/or willfully and wantonly failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

c.  Quality purposefully, consciously and/or willfully and wantonly failed to obtain Sampson Adu Boadi's (hereinafter "Adu Boadi") complete application for employment in violation of Part 391 of the FMCSRs;

d.  Quality purposefully, consciously and/or willfully and wantonly failed to require Adu Boadi to comply with duties and prohibitions of driver regulations in violation of Part 390 of the FMCSRs;

e.  Quality purposefully, consciously and/or willfully and wantonly encouraged Adu Boadi to violate the FMCSRs in violation of Part 390 of the FMCSRs;

f.  Quality purposefully, consciously and/or willfully and wantonly failed to maintain records and documents as required under Part 390 of the FMCSRs;

g.  Quality purposefully, consciously and/or willfully and wantonly maintained records and documents in violation of Part 390 of the FMCSRs;

h.  Quality purposefully, consciously and/or willfully and wantonly failed to maintain a complete driver's qualification file for Adu Boadi in violation of Part 391of the FMCSRs;

i.  Quality purposefully, consciously and/or willfully and wantonly maintained a driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

j.  Quality purposefully, consciously and/or willfully and wantonly permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

k.  Quality purposefully, consciously and/or willfully and wantonly required Adu Boadi to operate a tractor-trailer which it knew was in such a condition as to likely cause an accident or a breakdown of the vehicle in violation of Part 396 of the FMCSRs;

l.  Quality purposefully, consciously and/or willfully and wantonly failed to adequately train Adu Boadi when reasonable training would have equipped Adu Boadi with the knowledge and skill to operate and maintain the tractor-trailer in a reasonably prudent manner in violation of Part 391 of the FMCSRs;

m.  Quality purposefully, consciously and/or willfully and wantonly failed to conduct or require pre-trip inspections of its vehicle as required by Part 396 of the FMCSRs;

n.  Quality purposefully, consciously and/or willfully and wantonly failed to require Adu Boadi to complete driver's daily logs;

o.  Quality permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

p.  Quality purposefully, consciously and/or willfully and wantonly retained Adu Boadi who it knew or should have known was a careless and incompetent truck driver;

q.  Quality purposefully, consciously and/or willfully and wantonly failed to reprimand and provide remedial training to Adu Boadi;

r.  Quality purposefully, consciously and/or willfully and wantonly operated without adequate safety management controls; and/or

s.  Quality purposefully, consciously and/or willfully and wantonly failed to use the same care and caution that a reasonably prudent person would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.    As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by the Defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia.*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    As a further direct and proximate result of Earl's death, his estate has incurred medical, hospital and/or funeral and burial expenses and attorney's fees.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this survival action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Quality Services, LLC for

compensatory damages in an amount to be determined herein, for the costs of this action,

and for any and all other relief that the Court may deem proper under the circumstances.

### Count VI

### Quality Services, LLC – Respondeat Superior - Wrongful Death

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as

Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter

"Estate"), complaining of Defendant, Quality Services, LLC, (hereafter "Quality"), pursuant

to the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq., allege and state as follows:

1.    At all times relevant herein, Quality was and is an interstate motor carrier

operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl")

was traveling westbound on County Road 400 North near its intersection with State Route

49, in Valparaiso, Indiana.

3.    On Sunday, October 8, 2006, Quality, through its employee and/or agent

Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer

(hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State

Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois

a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the

Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Quality was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6. On Sunday, October 8, 2006, Quality breached the foregoing duties and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

a.   Quality, through its employee and or agent, Sampson Adu Boadi, operated the tractor-trailer at an unreasonable speed given the extant conditions;

b.   Quality, through its employee and or agent, Sampson Adu Boadi operated the tractor-trailer in an unreasonable manner;

c.   Quality, through its employee and or agent, Sampson Adu Boadi, failed to exercise due care to avoid a collision;

d.   Quality, through its employee and or agent, Sampson Adu Boadi, failed to maintain his tractor-trailer under reasonable control;

e.   Quality, through its employee and or agent, Sampson Adu Boadi, failed to maintain a proper lookout;

f.   Quality, through its employee and or agent, Sampson Adu Boadi, failed to use his brakes in a safe and proper manner;

g.   Quality, through its employee and or agent, Sampson Adu Boadi, operated his tractor-trailer in a sleep deprived or fatigued state;

h.   Quality, through its employee and or agent, Sampson Adu Boadi, disregarded traffic control signals, in violation of Indiana statute;

23

i.    Quality, through its employee and or agent, Sampson Adu Boadi, failed to slow down as he approached an intersection in violation of Indiana statute;

j.    Quality, through its employee and or agent, Sampson Adu Boadi, willfully and wantonly refused to stop his vehicle when required by the traffic control signals;

k.    Quality, through its employee and or agent, Sampson Adu Boadi, refused to yield the right of way; and/or

l.    Quality, through its employee and or agent, Sampson Adu Boadi, was otherwise careless, negligent and/or willful and wanton in the operation of the tractor-trailer.

7.    By subject of Quality's employment of and control over Sampson Adu Boadi,

Quality is subject to liability pursuant to the doctrine of respondeat superior.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter atia*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    As a further direct and proximate result of Earl's death, his estate has incurred medical, hospital and/or funeral and burial expenses and attorney's fees.

24

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this wrongful death action.

**WHEREFORE**, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Quality Services, LLC for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## Count VII

### Hub Group, Inc. – Negligence - Wrongful Death

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Hub Group, Inc., (hereafter "Hub"), pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq., allege and state as follows:

1. At all times relevant herein, Hub was and is an interstate motor carrier operating through and within the State of Illinois.

25

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl")
was traveling westbound on County Road 400 North near its intersection with State Route
49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Hub, through its employee and/or agent Defendant
Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter
"the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49,
near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois
a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the
Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Hub was subject to the FMCSRs and
owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the
inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring,
training, retention, and/or supervision of the drivers chosen to operate it.

6. On Sunday, October 8, 2006, Hub breached the foregoing duties and was
negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

    a.    Hub failed to systematically inspect, repair and maintain said tractor-trailer
subject to its control in violation of Part 396 of the FMCSRs;

    b.    Hub failed to cause the tractor-trailer subject to its control to be
systematically inspected, repaired and maintained in violation of Part 396 of
the FMCSRs;

c.    Hub failed to comply with statutory requirements, *inter alia.*, 625 ILCS 5/18b-112;

d.    Hub permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

e.    Hub failed to require Sampson Adu Boadi (hereinafter "Adu Boadi") to complete driver's daily logs;

f.    Hub permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

g.    Hub planned and directed delivery and dispatch schedules that were unreasonable, in that, given the extant circumstances, such schedules could not reasonably be performed within the time permitted under the FMCSRs;

h.    Hub operated without adequate safety management controls; and/or

i.    Hub failed to use the same care and caution that a reasonably prudent person and/or entity would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.    As a direct and proximate result of one or more of the foregoing negligent and/or willful and wanton acts and/or omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by the Defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, inter alia.: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

27

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    As a further direct and proximate result of Earl's death, his estate has incurred medical, hospital and/or funeral and burial expenses and attorney's fees.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this wrongful death action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Hub Group, Inc. for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## Count VIII

### Hub Group, Inc. – Willful and Wanton - Wrongful Death

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, HUB GROUP, INC., (hereafter "Hub"), pursuant to

28

the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq., allege and state as follows:

1. At all times relevant herein, Hub was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Hub, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Hub was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6.   On Sunday, October 8, 2006, Hub breached the foregoing duties and was

negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

a.   Hub purposefully, consciously and/or willfully and wantonly failed to systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

b.   Hub purposefully, consciously and/or willfully and wantonly failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

c.   Hub f purposefully, consciously and/or willfully and wantonly ailed to comply with statutory requirements, *inter alia.*, 625 ILCS 5/18b-112;

d.   Hub purposefully, consciously and/or willfully and wantonly permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

e.   Hub purposefully, consciously and/or willfully and wantonly failed to require Sampson Adu Boadi (hereinafter "Adu Boadi") to complete driver's daily logs;

f.   Hub purposefully, consciously and/or willfully and wantonly permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

g.   Hub purposefully, consciously and/or willfully and wantonly planned and directed delivery and dispatch schedules that were unreasonable, in that, given the extant circumstances, such schedules could not reasonably be performed within the time permitted under the FMCSRs;

h.   Hub purposefully, consciously and/or willfully and wantonly operated without adequate safety management controls; and/or

30

i. Hub purposefully, consciously and/or willfully and wantonly failed to use the same care and caution that a reasonably prudent person and/or entity would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7. As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by the Defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

8. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia.*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

9. As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10. As a further direct and proximate result of Earl's death, his estate has incurred medical, hospital and/or funeral and burial expenses and attorney's fees.

11. Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this wrongful death action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Hub Group, Inc. for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

### Count IX

### Hub Group, Inc. – Respondeat Superior - Wrongful Death

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, HUB GROUP, INC., (hereafter "Hub"), pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq., allege and state as follows:

1. At all times relevant herein, Hub was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Hub, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49,

near its intersection with County Road 400 North.

4.  At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs").  625 ILCS 5/18b-105.

5.  On and before Sunday, October 8, 2006, Hub was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6.  On Sunday, October 8, 2006, Hub breached the foregoing duties and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

a.  Hub, through its employee and or agent, Sampson Adu Boadi, operated the tractor-trailer at an unreasonable speed given the extant conditions;

b.  Hub, through its employee and or agent, Sampson Adu Boadi, operated the tractor-trailer in an unreasonable manner;

c.  Hub, through its employee and or agent, Sampson Adu Boadi, failed to exercise due care to avoid a collision;

d.  Hub, through its employee and or agent, Sampson Adu Boadi, failed to maintain his tractor-trailer under reasonable control;

e.  Hub, through its employee and or agent, Sampson Adu Boadi, failed to maintain a proper lookout;

33

f.   Hub, through its employee and or agent, Sampson Adu Boadi, failed to use his brakes in a safe and proper manner;

g.   Hub, through its employee and or agent, Sampson Adu Boadi, operated his tractor-trailer in a sleep deprived or fatigued state;

h.   Hub, through its employee and or agent, Sampson Adu Boadi, disregarded traffic control signals, in violation of Indiana statute;

i.   Hub, through its employee and or agent, Sampson Adu Boadi, failed to slow down as he approached an intersection in violation of Indiana statute;

j.   Hub, through its employee and or agent, Sampson Adu Boadi willfully and wantonly refused to stop his vehicle when required by the traffic control signals;

k.   Hub, through its employee and or agent, Sampson Adu Boadi, refused to yield the right of way; and/or

l.   Hub, through its employee and or agent, Sampson Adu Boadi, was otherwise careless, negligent and/or willful and wanton in the operation of the tractor-trailer.

7.   By subject of Hub's employment of and control over Sampson Adu Boadi, Quality is subject to liability pursuant to the doctrine of respondeat superior.

8.   On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

34

9.     As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.     As a further direct and proximate result of Earl's death, his estate has incurred medical, hospital and/or funeral and burial expenses and attorney's fees.

11.     Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this wrongful death action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Hub Group, Inc. for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

### Count X

### SAMPSON ADU BOADI – Negligence – Wrongful Death

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, SAMPSON ADU BOADI, (hereafter "Adu Boadi"),

pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq., allege and state as follows:

1. On Sunday, October 8, 2006, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

2. On Sunday, October 8, 2006, Adu Boadi was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), northbound on State Route 49, near its intersection with County Road 400 North, in Valparaiso, Indiana.

3. On and before Sunday, October 8, 2006, Adu Boadi was subject to the Federal Motor Carrier Safety Regulations (hereinafter "FMCSR's") and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer he was operating.

4. On Sunday, October 8, 2006, Adu Boadi breached the foregoing duty and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

   a. Adu Boadi operated the tractor-trailer at an unreasonable speed given the extant conditions;

   b. Adu Boadi operated the tractor-trailer in an unreasonable manner;

   c. Adu Boadi failed to exercise due care to avoid a collision;

   d. Adu Boadi failed to maintain his tractor-trailer under reasonable control;

   e. Adu Boadi failed to maintain a proper lookout;

36

f.     Adu Boadi failed to use his brakes in a safe and proper manner;

g.     Adu Boadi operated his tractor-trailer in a sleep deprived or fatigued
       state;

h.     Adu Boadi disregarded traffic control signals, in violation of Indiana statute;

i.     Adu Boadi failed to slow down as he approached an intersection in violation
       of Indiana statute;

j.     Adu Boadi willfully and wantonly refused to stop his vehicle when required
       by the traffic control signals;

k.     Adu Boadi refused to yield the right of way; and/or

l.     Adu Boadi was otherwise careless, negligent and/or willful and wanton in
       the operation of the tractor-trailer.

5.     As a direct and proximate result of one or more of the foregoing negligent

and/or willful and wanton acts and omissions of the Defendant, Plaintiffs' decedent, Earl,

was struck by defendant's tractor-trailer, resulting in catastrophic injuries which caused his

death on October 8, 2006.

6.     On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter*

*alia*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah

Eaton-Madrid.

7.     As a direct and proximate result of Earl's death, Earl's dependents

have been permanently deprived of his love, care, comfort, companionship, guidance,

services and support which he had ably provided prior to October 8, 2006.

37

8.    As a further direct and proximate result of Earl's death, his estate has incurred medical, hospital and/or funeral and burial expenses and attorney's fees.

9.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this wrongful death action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, SAMPSON ADU BOADI, for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## Count XI

## SAMPSON ADU BOADI – Willful and Wanton – Wrongful Death

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, SAMPSON ADU BOADI, (hereafter "Adu Boadi"), pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq., allege and state as follows:

1.  On Sunday, October 8, 2006, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

2.  On Sunday, October 8, 2006, Adu Boadi was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), northbound on State Route 49, near its intersection with County Road 400 North, in Valparaiso, Indiana.

3.  On and before Sunday, October 8, 2006, Adu Boadi was subject to the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs") and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer he was operating.

4.  On Sunday, October 8, 2006, Adu Boadi breached the foregoing duty and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

   a.    Adu Boadi purposefully, consciously and/or willfully and wantonly operated the tractor-trailer at an unreasonable speed given the extant conditions;

   b.    Adu Boadi purposefully, consciously and/or willfully and wantonly operated the tractor-trailer in an unreasonable manner;

   c.    Adu Boadi purposefully, consciously and/or willfully and wantonly failed to exercise due care to avoid a collision;

   d.    Adu Boadi purposefully, consciously and/or willfully and wantonly failed to maintain his tractor-trailer under reasonable control;

   e.    Adu Boadi purposefully, consciously and/or willfully and wantonly failed to maintain a proper lookout;

39

f.    Adu Boadi purposefully, consciously and/or willfully and wantonly failed to use his brakes in a safe and proper manner;

g.    Adu Boadi purposefully, consciously and/or willfully and wantonly operated his tractor-trailer in a sleep deprived or fatigued state;

h.    Adu Boadi purposefully, consciously and/or willfully and wantonly disregarded traffic control signals, in violation of Indiana statute;

i.    Adu Boadi purposefully, consciously and/or willfully and wantonly failed to slow down as he approached an intersection in violation of Indiana statute;

j.    Adu Boadi willfully and wantonly refused to stop his vehicle when required by the traffic control signals;

k.    Adu Boadi purposefully, consciously and/or willfully and wantonly refused to yield the right of way; and/or

l.    Adu Boadi was otherwise careless, negligent and/or willful and wanton in the operation of the tractor-trailer.

5.    As a direct and proximate result of one or more of the foregoing willful and wanton acts and omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

6.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia.*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

40

7.     As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

8.     As a further direct and proximate result of Earl's death, his estate has incurred medical, hospital and/or funeral and burial expenses and attorney's fees.

9.     Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this wrongful death action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, SAMPSON ADU BOADI, for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## Count XII

## Q.S. of Illinois, LLC – Negligence - Survival

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Q.S. OF ILLINOIS, LLC, (hereafter "Q.S.I."), pursuant

41

to the Illinois Survival Act 755 ILCS 5/27-6, allege and state as follows:

1. At all times relevant herein, Q.S.I is an limited liability company duly formed and organized under the laws of state of Illinois, with its principal place of in Illinois, and was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Q.S.I., through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Q.S.I. was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

42

6. On Sunday, October 8, 2006, Q.S.I. breached the foregoing duties and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

a.   Q.S.I. failed to and systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

b.   Q.S.I. failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

c.   Q.S.I. failed to obtain Sampson Adu Boadi's (hereinafter "Adu Boadi") complete application for employment in violation of Part 391 of the FMCSRs;

d.   Q.S.I. failed to require Adu Boadi to comply with duties and prohibitions of driver regulations in violation of Part 390 of the FMCSRs;

e.   Q.S.I. encouraged Adu Boadi to violate the FMCSRs in violation of Part 390 of the FMCSRs;

f.   Q.S.I. failed to maintain records and documents as required under Part 390 of the FMCSRs;

g.   Q.S.I. improperly maintained records and documents in violation of Part 390 of the FMCSRs;

h.   Q.S.I. failed to maintain a complete driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

i.   Q.S.I. improperly maintained a driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

j.   Q.S.I. permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

43

k.    Q.S.I. required Adu Boadi to operate a tractor-trailer which it knew was in such a condition as to likely cause an accident or a breakdown of the vehicle in violation of Part 396 of the FMCSRs;

l.    Q.S.I. failed to adequately train Adu Boadi when reasonable training would have equipped Adu Boadi with the knowledge and skill to operate and maintain the tractor-trailer in a reasonably prudent manner in violation of Part 391 of the FMCSRs;

m.    Q.S.I. failed to conduct or require pre-trip inspections of its vehicle as required by Part 396 of the FMCSRs;

n.    Q.S.I. failed to require Adu Boadi to complete driver's daily logs;

o.    Q.S.I. permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

p.    Q.S.I. retained Adu Boadi who it knew or should have known was a careless and incompetent truck driver;

q.    Q.S.I. failed to reprimand and provide remedial training to Adu Boadi;

r.    Q.S.I. operated without adequate safety management controls; and/or

s.    Q.S.I. failed to use the same care and caution that a reasonably prudent person would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.    As a direct and proximate result of one or more of the foregoing negligent and/or willful and wanton acts and/or omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by the Defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, inter alia.: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    Prior to his death, and as a direct and proximate result of defendant's aforesaid conduct, Earl suffered fright, terror, mental anguish, emotional distress and suffering from the moment immediately prior to the crash until the time of his death.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this survival action.

**WHEREFORE**, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Q.S. of Illinois, LLC for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

45

## Count XIII

### Q.S. of Illinois – Willful and Wanton - Survival

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Q.S. OF ILLINOIS, LLC, (hereafter "Q.S.I."), pursuant to the Illinois Survival Act 755 ILCS 5/27-6, allege and state as follows:

1. At all times relevant herein, Q.S.I is an limited liability company duly formed and organized under the laws of state of Illinois, with its principal place of in Illinois, and was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Q.S.I, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

46

5. On and before Sunday, October 8, 2006, Q.S.I was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6. On Sunday, October 8, 2006, Q.S.I breached the foregoing duties and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

    a.    Q.S.I. purposefully, consciously and/or willfully and wantonly failed to systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

    b.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

    c.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to obtain Sampson Adu Boadi's (hereinafter "Adu Boadi") complete application for employment in violation of Part 391 of the FMCSRs;

    d.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to require Adu Boadi to comply with duties and prohibitions of driver regulations in violation of Part 390 of the FMCSRs;

    e.    Q.S.I purposefully, consciously and/or willfully and wantonly encouraged Adu Boadi to violate the FMCSRs in violation of Part 390 of the FMCSRs;

    f.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to maintain records and documents as required under Part 390 of the FMCSRs;

    g.    Q.S.I purposefully, consciously and/or willfully and wantonly maintained records and documents in violation of Part 390 of the FMCSRs;

47

h.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to maintain a complete driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

i.    Q.S.I purposefully, consciously and/or willfully and wantonly maintained a driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

j.    Q.S.I purposefully, consciously and/or willfully and wantonly permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

k.    Q.S.I purposefully, consciously and/or willfully and wantonly required Adu Boadi to operate a tractor-trailer which it knew was in such a condition as to likely cause an accident or a breakdown of the vehicle in violation of Part 396 of the FMCSRs;

l.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to adequately train Adu Boadi when reasonable training would have equipped Adu Boadi with the knowledge and skill to operate and maintain the tractor-trailer in a reasonably prudent manner in violation of Part 391 of the FMCSRs;

m.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to conduct or require pre-trip inspections of its vehicle as required by Part 396 of the FMCSRs;

n.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to require Adu Boadi to complete driver's daily logs;

o.    Q.S.I purposefully, consciously and/or willfully and wantonly permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

p.    Q.S.I purposefully, consciously and/or willfully and wantonly retained Adu Boadi who it knew or should have known was a careless and incompetent truck driver;

48

q.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to reprimand and provide remedial training to Adu Boadi;

r.    Q.S.I purposefully, consciously and/or willfully and wantonly operated without adequate safety management controls; and/or

s.    Q.S.I purposefully, consciously and/or willfully and wantonly failed to use the same care and caution that a reasonably prudent person would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.    As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by the Defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    Prior to his death, and as a direct and proximate result of defendant's aforesaid conduct, Earl suffered fright, terror, mental anguish, emotional distress and suffering from the moment immediately prior to the crash until the time of his death.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this survival action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Q.S. of Illinois for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## Count XIV

### Q.S. of Illinois, LLC – Respondeat Superior - Survival

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Q.S. of ILLINOIS, LLC, (hereafter "Q.S.I."), pursuant to the Illinois Survival Act 755 ILCS 5/27-6, allege and state as follows:

1.    At all times relevant herein, Q.S.I. is an limited liability company duly formed and organized under the laws of state of Illinois, with its principal place of in Illinois, and was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Q.S.I, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Q.S.I was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6. On Sunday, October 8, 2006, Q.S.I breached the foregoing duties and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

   a.    Q.S.I, through its employee and or agent, Sampson Adu Boadi, operated the tractor-trailer at an unreasonable speed given the extant conditions;

51

b.    Q.S.I., through its employee and or agent, Sampson Adu Boadi, operated the tractor-trailer in an unreasonable manner;

c.    Q.S.I , through its employee and or agent, Sampson Adu Boadi, failed to exercise due care to avoid a collision;

d.    Q.S.I , through its employee and or agent, Sampson Adu Boadi, failed to maintain his tractor-trailer under reasonable control;

e.    Q.S.I , through its employee and or agent, Sampson Adu Boadi failed to maintain a proper lookout;

f.    Q.S.I., through its employee and or agent, Sampson Adu Boadi, failed to use his brakes in a safe and proper manner;

g.    Q.S.I , through its employee and or agent, Sampson Adu Boadi, operated his tractor-trailer in a sleep deprived or fatigued state;

h.    Q.S.I , through its employee and or agent, Sampson Adu Boadi, disregarded traffic control signals, in violation of Indiana statute;

i.    Q.S.I, through its employee and or agent, Sampson Adu Boadi, failed to slow down as he approached an intersection in violation of Indiana statute;

j.    Q.S.I, through its employee and or agent, Sampson Adu Boadi, willfully and wantonly refused to stop his vehicle when required by the traffic control signals;

k.    Q.S.I , through its employee and or agent, Sampson Adu Boadi, refused to yield the right of way; and/or

l.    Q.S.I , through its employee and or agent, Sampson Adu Boadi, was otherwise careless, negligent and/or willful and wanton in the operation of the tractor-trailer.

7.    By subject of Q.S.I's employment of and control over Sampson Adu Boadi, Quality is subject to liability pursuant to the doctrine of respondeat superior.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    Prior to his death, and as a direct and proximate result of defendant's aforesaid conduct, Earl suffered fright, terror, mental anguish, emotional distress and suffering from the moment immediately prior to the crash until the time of his death.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this survival action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Q.S. of Illinois, LLC for compensatory damages in an amount to be determined herein, for the costs of this action,

and for any and all other relief that the Court may deem proper under the circumstances.

## Count XV

### Quality Services, LLC – Negligence - Survival

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Quality Services, LLC, (hereafter "Quality"), pursuant to the Illinois Survival Act 755 ILCS 5/27-6, allege and state as follows:

1.    At all times relevant herein, Quality was and is an interstate motor carrier operating through and within the State of Illinois.

2.   On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3.    On Sunday, October 8, 2006, Quality, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4.    At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Quality was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6. On Sunday, October 8, 2006, Quality breached the foregoing duties and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

a. Quality failed to systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

b. Quality failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

c. Quality failed to obtain Sampson Adu Boadi's (hereinafter "Adu Boadi") complete application for employment in violation of Part 391 of the FMCSRs;

d. Quality failed to require Adu Boadi to comply with duties and prohibitions of driver regulations in violation of Part 390 of the FMCSRs;

e. Quality encouraged Adu Boadi to violate the FMCSRs in violation of Part 390 of the FMCSRs;

f. Quality failed to maintain records and documents as required under Part 390 of the FMCSRs;

g. Quality improperly maintained records and documents in violation of Part 390 of the FMCSRs;

h. Quality failed to maintain a complete driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

i.    Quality improperly maintained a driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

j.    Quality permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

k.    Quality required Adu Boadi to operate a tractor-trailer which it knew was in such a condition as to likely cause an accident or a breakdown of the vehicle in violation of Part 396 of the FMCSRs;

l.    Quality failed to adequately train Adu Boadi when reasonable training would have equipped Adu Boadi with the knowledge and skill to operate and maintain the tractor-trailer in a reasonably prudent manner in violation of Part 391 of the FMCSRs;

m.    Quality failed to conduct or require pre-trip inspections of its vehicle as required by Part 396 of the FMCSRs;

n.    Quality failed to require Adu Boadi to complete driver's daily logs;

o.    Quality permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

p.    Quality retained Adu Boadi who it knew or should have known was a careless and incompetent truck driver;

q.    Quality failed to reprimand and provide remedial training to Adu Boadi;

r.    Quality operated without adequate safety management controls; and/or

s.    Quality failed to use the same care and caution that a reasonably prudent person would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.    As a direct and proximate result of one or more of the foregoing negligent and/or willful and wanton acts and/or omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by the Defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, inter alia.: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    Prior to his death, and as a direct and proximate result of defendant's aforesaid conduct, Earl suffered fright, terror, mental anguish, emotional distress and suffering from the moment immediately prior to the crash until the time of his death.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this survival action.

57

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Quality Services, LLC for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## Count XVI

### Quality Services, LLC – Willful and Wanton - Survival

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Quality Services, LLC, (hereafter "Quality"), pursuant to the Illinois Survival Act 755 ILCS 5/27-6, allege and state as follows:

1.    At all times relevant herein, Quality was and is an interstate motor carrier operating through and within the State of Illinois.

2.   On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3.    On Sunday, October 8, 2006, Quality, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State

Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Quality was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6. On Sunday, October 8, 2006, Quality breached the foregoing duties and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

    a.    Quality purposefully, consciously and/or willfully and wantonly failed to systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

    b.    Quality purposefully, consciously and/or willfully and wantonly failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

    c.    Quality purposefully, consciously and/or willfully and wantonly failed to obtain Sampson Adu Boadi's (hereinafter "Adu Boadi") complete application for employment in violation of Part 391 of the FMCSRs;

    d.    Quality purposefully, consciously and/or willfully and wantonly failed to require Adu Boadi to comply with duties and prohibitions of driver regulations in violation of Part 390 of the FMCSRs;

    e.    Quality purposefully, consciously and/or willfully and wantonly encouraged Adu Boadi to violate the FMCSRs in violation of Part 390 of the FMCSRs;

f.    Quality purposefully, consciously and/or willfully and wantonly failed to maintain records and documents as required under Part 390 of the FMCSRs;

g.    Quality purposefully, consciously and/or willfully and wantonly maintained records and documents in violation of Part 390 of the FMCSRs;

h.    Quality purposefully, consciously and/or willfully and wantonly failed to maintain a complete driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

i.    Quality purposefully, consciously and/or willfully and wantonly maintained a driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

j.    Quality purposefully, consciously and/or willfully and wantonly permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

k.    Quality purposefully, consciously and/or willfully and wantonly required Adu Boadi to operate a tractor-trailer which it knew was in such a condition as to likely cause an accident or a breakdown of the vehicle in violation of Part 396 of the FMCSRs;

l.    Quality purposefully, consciously and/or willfully and wantonly failed to adequately train Adu Boadi when reasonable training would have equipped Adu Boadi with the knowledge and skill to operate and maintain the tractor-trailer in a reasonably prudent manner in violation of Part 391 of the FMCSRs;

m.    Quality purposefully, consciously and/or willfully and wantonly failed to conduct or require pre-trip inspections of its vehicle as required by Part 396 of the FMCSRs;

n.    Quality purposefully, consciously and/or willfully and wantonly failed to require Adu Boadi to complete driver's daily logs;

60

o.    Quality permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

p.    Quality purposefully, consciously and/or willfully and wantonly retained Adu Boadi who it knew or should have known was a careless and incompetent truck driver;

q.    Quality purposefully, consciously and/or willfully and wantonly failed to reprimand and provide remedial training to Adu Boadi;

r.    Quality purposefully, consciously and/or willfully and wantonly operated without adequate safety management controls; and/or

s.    Quality purposefully, consciously and/or willfully and wantonly failed to use the same care and caution that a reasonably prudent person would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.    As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by the Defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia.*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    Prior to his death, and as a direct and proximate result of defendant's aforesaid conduct, Earl suffered fright, terror, mental anguish, emotional distress and suffering from the moment immediately prior to the crash until the time of his death.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this survival action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Quality Services, LLC for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

### Count XVII

### Quality Services, LLC – Respondeat Superior - Survival

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Quality Services, LLC, (hereafter "Quality"), pursuant to the Illinois Survival Act 755 ILCS 5/27-6, allege and state as follows:

62

2

b.   Quality, through its employee and or agent, Sampson Adu Boadi operated the tractor-trailer in an unreasonable manner;

c.   Quality, through its employee and or agent, Sampson Adu Boadi, failed to exercise due care to avoid a collision;

d.   Quality, through its employee and or agent, Sampson Adu Boadi, failed to maintain his tractor-trailer under reasonable control;

e.   Quality, through its employee and or agent, Sampson Adu Boadi, failed to maintain a proper lookout;

f.   Quality, through its employee and or agent, Sampson Adu Boadi, failed to use his brakes in a safe and proper manner;

g.   Quality, through its employee and or agent, Sampson Adu Boadi, operated his tractor-trailer in a sleep deprived or fatigued state;

h.   Quality, through its employee and or agent, Sampson Adu Boadi, disregarded traffic control signals, in violation of Indiana statute;

i.   Quality, through its employee and or agent, Sampson Adu Boadi, failed to slow down as he approached an intersection in violation of Indiana statute;

j.   Quality, through its employee and or agent, Sampson Adu Boadi, willfully and wantonly refused to stop his vehicle when required by the traffic control signals;

k.   Quality, through its employee and or agent, Sampson Adu Boadi, refused to yield the right of way; and/or

l.   Quality, through its employee and or agent, Sampson Adu Boadi, was otherwise careless, negligent and/or willful and wanton in the operation of the tractor-trailer.

7.     By subject of Quality's employment of and control over Sampson Adu Boadi, Quality is subject to liability pursuant to the doctrine of respondeat superior.

8.     On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia.*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

9.     As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.     Prior to his death, and as a direct and proximate result of defendant's aforesaid conduct, Earl suffered fright, terror, mental anguish, emotional distress and suffering from the moment immediately prior to the crash until the time of his death.

11.     Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this survival action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Quality Services, LLC for compensatory damages in an amount to be determined herein, for the costs of this action,

and for any and all other relief that the Court may deem proper under the circumstances.

## Count XVIII

### Hub Group, Inc. – Negligence - Survival

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Hub Group, Inc., (hereafter "Hub"), pursuant to the Illinois Survival Act 755 ILCS 5/27-6, allege and state as follows:

1. At all times relevant herein, Hub was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Hub, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Hub was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6. On Sunday, October 8, 2006, Hub breached the foregoing duties and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

a. Hub failed to systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

b. Hub failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

c. Hub failed to comply with statutory requirements, *inter alia*, 625 ILCS 5/18b-112;

d. Hub permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

e. Hub failed to require Sampson Adu Boadi (hereinafter "Adu Boadi") to complete driver's daily logs;

f. Hub permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

g. Hub planned and directed delivery and dispatch schedules that were unreasonable, in that, given the extant circumstances, such schedules could not reasonably be performed within the time permitted under the FMCSRs;

h. Hub operated without adequate safety management controls; and/or

67

i.   Hub failed to use the same care and caution that a reasonably prudent person and/or entity would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.    As a direct and proximate result of one or more of the foregoing negligent and/or willful and wanton acts and/or omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by the Defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia.*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton, and Deborah Eaton-Madrid.

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    Prior to his death, and as a direct and proximate result of defendant's aforesaid conduct, Earl suffered fright, terror, mental anguish, emotional distress and suffering from the moment immediately prior to the crash until the time of his death.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this survival action.

68

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Hub Group, Inc. for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

### Count XIX

### Hub Group, Inc. – Willful and Wanton - Survival

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, HUB GROUP, INC., (hereafter "Hub"), pursuant to the Illinois Survival Act 755 ILCS 5/27-6, allege and state as follows:

1. At all times relevant herein, Hub was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Hub, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49,

69

near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Hub was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6. On Sunday, October 8, 2006, Hub breached the foregoing duties and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

a. Hub purposefully, consciously and/or willfully and wantonly failed to systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

b. Hub purposefully, consciously and/or willfully and wantonly failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

c. Hub f purposefully, consciously and/or willfully and wantonly ailed to comply with statutory requirements, *inter alia*, 625 ILCS 5/18b-112;

d. Hub purposefully, consciously and/or willfully and wantonly permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

70

e.    Hub purposefully, consciously and/or willfully and wantonly failed to require Sampson Adu Boadi (hereinafter "Adu Boadi") to complete driver's daily logs;

f.    Hub purposefully, consciously and/or willfully and wantonly permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

g.    Hub purposefully, consciously and/or willfully and wantonly planned and directed delivery and dispatch schedules that were unreasonable, in that, given the extant circumstances, such schedules could not reasonably be performed within the time permitted under the FMCSRs;

h.    Hub purposefully, consciously and/or willfully and wantonly operated without adequate safety management controls; and/or

i.    Hub purposefully, consciously and/or willfully and wantonly failed to use the same care and caution that a reasonably prudent person and/or entity would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.    As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by the Defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

8.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, inter alia.: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

71

9.    As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.    Prior to his death, and as a direct and proximate result of defendant's aforesaid conduct, Earl suffered fright, terror, mental anguish, emotional distress and suffering from the moment immediately prior to the crash until the time of his death.

11.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this survival action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Hub Group, Inc. for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## Count XX

### Hub Group, Inc. – Respondeat Superior - Survival

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter

72

"Estate"), complaining of Defendant, HUB GROUP, INC., (hereafter "Hub"), pursuant to the Illinois Survival Act 755 ILCS 5/27-6, allege and state as follows:

1. At all times relevant herein, Hub was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Hub, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Hub was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

73

6.  On Sunday, October 8, 2006, Hub breached the foregoing duties and was

negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

a.  Hub, through its employee and or agent, Sampson Adu Boadi, operated the tractor-trailer at an unreasonable speed given the extant conditions;

b.  Hub, through its employee and or agent, Sampson Adu Boadi, operated the tractor-trailer in an unreasonable manner;

c.  Hub, through its employee and or agent, Sampson Adu Boadi, failed to exercise due care to avoid a collision;

d.  Hub, through its employee and or agent, Sampson Adu Boadi, failed to maintain his tractor-trailer under reasonable control;

e.  Hub, through its employee and or agent, Sampson Adu Boadi, failed to maintain a proper lookout;

f.  Hub, through its employee and or agent, Sampson Adu Boadi, failed to use his brakes in a safe and proper manner;

g.  Hub, through its employee and or agent, Sampson Adu Boadi, operated his tractor-trailer in a sleep deprived or fatigued state;

h.  Hub, through its employee and or agent, Sampson Adu Boadi, disregarded traffic control signals, in violation of Indiana statute;

i.  Hub, through its employee and or agent, Sampson Adu Boadi, failed to slow down as he approached an intersection in violation of Indiana statute;

j.  Hub, through its employee and or agent, Sampson Adu Boadi willfully and wantonly refused to stop his vehicle when required by the traffic control signals;

k.  Hub, through its employee and or agent, Sampson Adu Boadi, refused to yield the right of way; and/or

74

I.   Hub, through its employee and or agent, Sampson Adu Boadi, was otherwise careless, negligent and/or willful and wanton in the operation of the tractor-trailer.

7.   By subject of Hub's employment of and control over Sampson Adu Boadi, Quality is subject to liability pursuant to the doctrine of respondeat superior.

8.   On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia*.: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

9.   As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

10.   Prior to his death, and as a direct and proximate result of defendant's aforesaid conduct, Earl suffered fright, terror, mental anguish, emotional distress and suffering from the moment immediately prior to the crash until the time of his death.

11.   Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this survival action.

75

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Hub Group, Inc. for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## Count XXI

## SAMPSON ADU BOADI – Negligence – Survival

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, SAMPSON ADU BOADI, (hereafter "Adu Boadi"), pursuant to the Illinois Survival Act 755 ILCS 5/27-6, allege and state as follows:

1.    On Sunday, October 8, 2006, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

2.    On Sunday, October 8, 2006, Adu Boadi was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), northbound on State Route 49, near its intersection with County Road 400 North, in Valparaiso, Indiana.

3.    On and before Sunday, October 8, 2006, Adu Boadi was subject to the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs") and owed Plaintiffs' decedent

76

and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer he was operating.

4. On Sunday, October 8, 2006, Adu Boadi breached the foregoing duty and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

a.   Adu Boadi operated the tractor-trailer at an unreasonable speed given the extant conditions;

b.   Adu Boadi operated the tractor-trailer in an unreasonable manner;

c.   Adu Boadi failed to exercise due care to avoid a collision;

d.   Adu Boadi failed to maintain his tractor-trailer under reasonable control;

e.   Adu Boadi failed to maintain a proper lookout;

f.   Adu Boadi failed to use his brakes in a safe and proper manner;

g.   Adu Boadi operated his tractor-trailer in a sleep deprived or fatigued state;

h.   Adu Boadi disregarded traffic control signals, in violation of Indiana statute;

i.   Adu Boadi failed to slow down as he approached an intersection in violation of Indiana statute;

j.   Adu Boadi willfully and wantonly refused to stop his vehicle when required by the traffic control signals;

k.   Adu Boadi refused to yield the right of way; and/or

l.   Adu Boadi was otherwise careless, negligent and/or willful and wanton in the operation of the tractor-trailer.

5.  As a direct and proximate result of one or more of the foregoing negligent and/or willful and wanton acts and omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on October 8, 2006.

6.  On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter alia.*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah Eaton-Madrid.

7.  As a direct and proximate result of Earl's death, Earl's dependents have been permanently deprived of his love, care, comfort, companionship, guidance, services and support which he had ably provided prior to October 8, 2006.

8.  Prior to his death, and as a direct and proximate result of defendant's aforesaid conduct, Earl suffered fright, terror, mental anguish, emotional distress and suffering from the moment immediately prior to the crash until the time of his death.

9.  Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H. EATON, deceased, by the Porter Superior Court, and are authorized to bring this survival action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, SAMPSON ADU BOADI, for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

### Count XXII

### SAMPSON ADU BOADI – Willful and Wanton – Survival

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, SAMPSON ADU BOADI, (hereafter "Adu Boadi"), pursuant to the Illinois Survival Act 755 ILCS 5/27-6, allege and state as follows:

1.    On Sunday, October 8, 2006, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

2.    On Sunday, October 8, 2006, Adu Boadi was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), northbound on State Route 49, near its intersection with County Road 400 North, in Valparaiso, Indiana.

3.    On and before Sunday, October 8, 2006, Adu Boadi was subject to the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs") and owed Plaintiffs' decedent

and others on the roadway a duty to use reasonable care in the inspection, maintenance,

repair, and operation of the tractor-trailer he was operating.

    4.  On Sunday, October 8, 2006, Adu Boadi breached the foregoing duty and was

negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

a.    Adu Boadi purposefully, consciously and/or willfully and wantonly operated the tractor-trailer at an unreasonable speed given the extant conditions;

b.    Adu Boadi purposefully, consciously and/or willfully and wantonly operated the tractor-trailer in an unreasonable manner;

c.    Adu Boadi purposefully, consciously and/or willfully and wantonly failed to exercise due care to avoid a collision;

d.    Adu Boadi purposefully, consciously and/or willfully and wantonly failed to maintain his tractor-trailer under reasonable control;

e.    Adu Boadi purposefully, consciously and/or willfully and wantonly failed to maintain a proper lookout;

f.    Adu Boadi purposefully, consciously and/or willfully and wantonly failed to use his brakes in a safe and proper manner;

g.    Adu Boadi purposefully, consciously and/or willfully and wantonly operated his tractor-trailer in a sleep deprived or fatigued state;

h.    Adu Boadi purposefully, consciously and/or willfully and wantonly disregarded traffic control signals, in violation of Indiana statute;

i.    Adu Boadi purposefully, consciously and/or willfully and wantonly failed to slow down as he approached an intersection in violation of Indiana statute;

j.    Adu Boadi willfully and wantonly refused to stop his vehicle when required
      by the traffic control signals;

k.    Adu Boadi purposefully, consciously and/or willfully and wantonly refused
      to yield the right of way; and/or

l.    Adu Boadi was otherwise careless, negligent and/or willful and wanton in
      the operation of the tractor-trailer.

5.    As a direct and proximate result of one or more of the foregoing willful and

wanton acts and omissions of the Defendant, Plaintiffs' decedent, Earl, was struck by

defendant's tractor-trailer, resulting in catastrophic injuries which caused his death on

October 8, 2006.

6.    On Sunday, October 8, 2006, Plaintiffs' decedent, Earl, left surviving him, *inter*

*alia.*: Carla Frances Joseph; Kathy Lee Eaton-Herrera; William Earl Eaton; and Deborah

Eaton-Madrid.

7.    As a direct and proximate result of Earl's death, Earl's dependents

have been permanently deprived of his love, care, comfort, companionship, guidance,

services and support which he had ably provided prior to October 8, 2006.

8.    Prior to his death, and as a direct and proximate result of defendant's

aforesaid conduct, Earl suffered fright, terror, mental anguish, emotional distress and

suffering from the moment immediately prior to the crash until the time of his death.

9.    Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R.

WRIGHT, were duly appointed Co-Special Administrators of the Estate of EARL H.

81

EATON, deceased, by the Porter Superior Court, and are authorized to bring this survival action.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, SAMPSON ADU BOADI, for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

### Q.S. of Illinois, LLC – Common Law Funeral and Burial Expenses

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Q.S. OF ILLINOIS, LLC, (hereafter "Q.S.I."), allege and state as follows:

1. At all times relevant herein, Q.S.I is an limited liability company duly formed and organized under the laws of state of Illinois, with its principal place of in Illinois, and was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Q.S.I., through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia,* Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Q.S.I. was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6. On Sunday, October 8, 2006, Q.S.I. breached the foregoing duties and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

    a.    Q.S.I. failed to systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

    b.    Q.S.I. failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

    c.    Q.S.I. failed to obtain Sampson Adu Boadi's (hereinafter "Adu Boadi") complete application for employment in violation of Part 391 of the FMCSRs;

    d.    Q.S.I. failed to require Adu Boadi to comply with duties and prohibitions of driver regulations in violation of Part 390 of the FMCSRs;

e.    Q.S.I. encouraged Adu Boadi to violate the FMCSRs in violation of Part 390 of the FMCSRs;

f.    Q.S.I. failed to maintain records and documents as required under Part 390 of the FMCSRs;

g.    Q.S.I. improperly maintained records and documents in violation of Part 390 of the FMCSRs;

h.    Q.S.I. failed to maintain a complete driver's qualification file for Adu Boadi in violation of Part 391of the FMCSRs;

i.    Q.S.I. improperly maintained a driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

j.    Q.S.I. permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

k.    Q.S.I. required Adu Boadi to operate a tractor-trailer which it knew was in such a condition as to likely cause an accident or a breakdown of the vehicle in violation of Part 396 of the FMCSRs;

l.    Q.S.I. failed to adequately train Adu Boadi when reasonable training would have equipped Adu Boadi with the knowledge and skill to operate and maintain the tractor-trailer in a reasonably prudent manner in violation of Part 391 of the FMCSRs;

m.    Q.S.I. failed to conduct or require pre-trip inspections of its vehicle as required by Part 396 of the FMCSRs;

n.    Q.S.I. failed to require Adu Boadi to complete driver's daily logs;

o.    Q.S.I. permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

p.    Q.S.I. retained Adu Boadi who it knew or should have known was a careless and incompetent truck driver;

84

q.    Q.S.I. failed to reprimand and provide remedial training to Adu Boadi;

r.    Q.S.I. operated without adequate safety management controls; and/or

s.    Q.S.I. failed to use the same care and caution that a reasonably prudent person would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.    As a direct and proximate result of aforesaid conduct, Earl's vehicle was struck, and sustained injuries which caused his death, and caused plaintiffs to incur medical, funeral, burial, and administration expenses as well as other damages of a personal and pecuniary nature, which are recoverable at common law, notwithstanding any provisions of Illinois Statutory law.

**WHEREFORE,** Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Q.S. of Illinois, LLC for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## Count XXIII

### Quality Services, LLC – Common Law Funeral and Burial Expenses

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Quality Services, LLC, (hereafter "Quality"), allege

and state as follows:

1.  At all times relevant herein, Quality was and is an interstate motor carrier operating through and within the State of Illinois.

2.  On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3.  On Sunday, October 8, 2006, Quality, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4.  At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia*, Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5.  On and before Sunday, October 8, 2006, Quality was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6.  On Sunday, October 8, 2006, Quality breached the foregoing duties and was negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

a.   Quality failed to systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

b.   Quality failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

c.   Quality failed to obtain Sampson Adu Boadi's (hereinafter "Adu Boadi") complete application for employment in violation of Part 391 of the FMCSRs;

d.   Quality failed to require Adu Boadi to comply with duties and prohibitions of driver regulations in violation of Part 390 of the FMCSRs;

e.   Quality encouraged Adu Boadi to violate the FMCSRs in violation of Part 390 of the FMCSRs;

f.   Quality failed to maintain records and documents as required under Part 390 of the FMCSRs;

g.   Quality improperly maintained records and documents in violation of Part 390 of the FMCSRs;

h.   Quality failed to maintain a complete driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

i.   Quality improperly maintained a driver's qualification file for Adu Boadi in violation of Part 391 of the FMCSRs;

j.   Quality permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

k.   Quality required Adu Boadi to operate a tractor-trailer which it knew was in such a condition as to likely cause an accident or a breakdown of the vehicle in violation of Part 396 of the FMCSRs;

l.    Quality failed to adequately train Adu Boadi when reasonable training would have equipped Adu Boadi with the knowledge and skill to operate and maintain the tractor-trailer in a reasonably prudent manner in violation of Part 391 of the FMCSRs;

m.    Quality failed to conduct or require pre-trip inspections of its vehicle as required by Part 396 of the FMCSRs;

n.    Quality failed to require Adu Boadi to complete driver's daily logs;

o.    Quality permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

p.    Quality retained Adu Boadi who it knew or should have known was a careless and incompetent truck driver;

q.    Quality failed to reprimand and provide remedial training to Adu Boadi;

r.    Quality operated without adequate safety management controls; and/or

s.    Quality failed to use the same care and caution that a reasonably prudent person would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.    As a direct and proximate result of the aforesaid conduct, Earl's vehicle was struck, and Earl sustained injuries which caused his death, and caused plaintiffs to incur medical, funeral, burial, and administration expenses as well as other damages of a personal and pecuniary nature, which are recoverable at common law, notwithstanding any provisions of Illinois Statutory law.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Quality Services, LLC for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

## Hub Group, Inc. – Common Law Funeral and Burial Expenses

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter "Estate"), complaining of Defendant, Hub Group, Inc., (hereafter "Hub"), allege and state as follows:

1. At all times relevant herein, Hub was and is an interstate motor carrier operating through and within the State of Illinois.

2. On Sunday, October 8, 2006, Plaintiffs' decedent, Earl H. Eaton (hereafter "Earl") was traveling westbound on County Road 400 North near its intersection with State Route 49, in Valparaiso, Indiana.

3. On Sunday, October 8, 2006, Hub, through its employee and/or agent Defendant Sampson Adu Boadi, was operating a semi tractor pulling an intermodal trailer (hereinafter "the tractor-trailer"), pursuant to its motor carrier operating authority, on State Route 49, near its intersection with County Road 400 North.

4. At all times relevant herein, there was in full force and effect in the State of Illinois a statute incorporating by reference, *inter alia,* Parts 390, 391, 392, 393, 395, and 396 of the Federal Motor Carrier Safety Regulations (hereinafter "FMCSRs"). 625 ILCS 5/18b-105.

5. On and before Sunday, October 8, 2006, Hub was subject to the FMCSRs and owed Plaintiffs' decedent and others on the roadway a duty to use reasonable care in the inspection, maintenance, repair, and operation of the tractor-trailer, and in the hiring, training, retention, and/or supervision of the drivers chosen to operate it.

6. On Sunday, October 8, 2006, Hub breached the foregoing duties and was negligent and/or willful and wanton in one or more of the following respects, *inter alia:*

a.      Hub failed to systematically inspect, repair and maintain said tractor-trailer subject to its control in violation of Part 396 of the FMCSRs;

b.      Hub failed to cause the tractor-trailer subject to its control to be systematically inspected, repaired and maintained in violation of Part 396 of the FMCSRs;

c.      Hub failed to comply with statutory requirements, *inter alia.,* 625 ILCS 5/18b-112;

d.      Hub permitted Adu Boadi to operate the tractor-trailer, while said driver's ability or alertness was so impaired as to make it unsafe for him to continue to operate it in violation of Part 392 of the FMCSRs;

e.      Hub failed to require Sampson Adu Boadi (hereinafter "Adu Boadi") to complete driver's daily logs;

f.      Hub permitted and/or required Adu Boadi to operate its tractor-trailer when he was in an out-of-service condition;

g.  Hub planned and directed delivery and dispatch schedules that were unreasonable, in that, given the extant circumstances, such schedules could not reasonably be performed within the time permitted under the FMCSRs;

h.  Hub operated without adequate safety management controls; and/or

i.  Hub failed to use the same care and caution that a reasonably prudent person and/or entity would have exercised under the same or substantially similar circumstances all in violation of Parts 390, 391, 392, 393, 395, and 396 of the FMCSRs.

7.  As a direct and proximate result of the aforesaid conduct, Earl's vehicle was struck, and Earl sustained injuries which caused his death, and caused plaintiffs to incur medical, funeral, burial, and administration expenses as well as other damages of a personal and pecuniary nature, which are recoverable at common law, notwithstanding any provisions of Illinois Statutory law.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, Hub Group, Inc. for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

### Count XXIV

### SAMPSON ADU BOADI – Common Law Funeral and Burial Expenses

Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased (hereinafter

"Estate"), complaining of Defendant, SAMPSON ADU BOADI, (hereafter "Adu Boadi"),
allege and state as follows:

1.   On Sunday, October 8, 2006, Earl H. Eaton (hereafter "Earl") was traveling
westbound on County Road 400 North near its intersection with State Route 49, in
Valparaiso, Indiana.

2.   On Sunday, October 8, 2006, Adu Boadi was operating a semi tractor pulling an
intermodal trailer (hereinafter "the tractor-trailer"), northbound on State Route 49, near its
intersection with County Road 400 North, in Valparaiso, Indiana.

3.   On and before Sunday, October 8, 2006, Adu Boadi was subject to the Federal
Motor Carrier Safety Regulations (hereinafter "FMCSRs") and owed Plaintiffs' decedent
and others on the roadway a duty to use reasonable care in the inspection, maintenance,
repair, and operation of the tractor-trailer he was operating.

4.   On Sunday, October 8, 2006, Adu Boadi breached the foregoing duty and was
negligent and/or willful and wanton in one or more of the following respects, *inter alia*:

a.   Adu Boadi operated the tractor-trailer at an unreasonable speed given the
extant conditions;

b.   Adu Boadi operated the tractor-trailer in an unreasonable manner;

c.   Adu Boadi failed to exercise due care to avoid a collision;

d.   Adu Boadi failed to maintain his tractor-trailer under reasonable control;

e.   Adu Boadi failed to maintain a proper lookout;

92

f.    Adu Boadi failed to use his brakes in a safe and proper manner;

g.    Adu Boadi operated his tractor-trailer in a sleep deprived or fatigued state;

h.    Adu Boadi disregarded traffic control signals, in violation of Indiana statute;

i.    Adu Boadi failed to slow down as he approached an intersection in violation of Indiana statute;

j.    Adu Boadi willfully and wantonly refused to stop his vehicle when required by the traffic control signals;

k.    Adu Boadi refused to yield the right of way; and/or

l.    Adu Boadi was otherwise careless, negligent and/or willful and wanton in the operation of the tractor-trailer.

5.    As a direct and proximate result of foregoing conduct, Earl's vehicle was struck, and Earl sustained injuries which caused his death, and caused plaintiffs to incur medical, funeral, burial, and administration expenses as well as other damages of a personal and pecuniary nature, which are recoverable at common law, notwithstanding any provisions of Illinois Statutory law.

WHEREFORE, Plaintiffs, FIRST NATIONAL BANK of VALPARAISO and JAMES R. WRIGHT, as Co-Special Administrators of the Estate of EARL H. EATON, deceased, demand judgment for damages against the Defendant, SAMPSON ADU BOADI, for compensatory damages in an amount to be determined herein, for the costs of this action, and for any and all other relief that the Court may deem proper under the circumstances.

Respectfully submitted,

KENNETH J. ALLEN & ASSOCIATES, P.C.
Attorneys for Plaintiffs

By:   Bryan L. Bradley

## JURY DEMAND

Plaintiff demands trial by jury on all counts of its Complaint at Law.

Respectfully submitted,

KENNETH J. ALLEN & ASSOCIATES, P.C.
Attorneys for Plaintiffs

Bryan L. Bradley



INJURY ATTORNEYS

*Refer to Office Indicated*

■ ALLEN LAW BUILDING
1109 Glendale Boulevard
Valparaiso, IN 46383

219.465.6292

☐ CHASE BANK CENTER
8585 Broadway, 8th Floor
Merrillville, IN 46410

219.736.6292

☐ CHARTER ONE BANK
17450 South Halsted St.
Homewood, IL 60430

708.799.6292

☐ SMURFIT-STONE BUILDING
150 North Michigan Ave.
Chicago, IL 60606

312.236.6292